## Stout v. Consolidated Rail Corp.

*David C. Mason,* for plaintiffs.
*John E. Person III,* for defendant.

BROWN, *P.J.,* June 4, 1991—This action arises from a freight train derailment which occurred on October 29, 1988. Defendant Consolidated Rail Corporation operated both the train and the tracks. Of the 34 cars that derailed, 29 or 30 came to rest on plaintiffs' property. The derailed cars contained coal.

The following facts are either undisputed or viewed in the light most favorable to plaintiffs. *Spain v. Vicente,* 315 Pa. Super. 135, 461 A.2d 833 (1983). Immediately following the derailment, Conrail clean-up crews gained access to the derailment site on plaintiffs' property by utilizing plaintiffs' private road. The clean-up crews broke a lock to open a gate that plaintiffs had erected across the private road. Within approximately 30 hours after the derailment, the clean-up crews had the track back in operation.

Conrail did not notify plaintiffs of the derailment or commencement of salvage or retrieval operations. Plaintiff Randy Stout discovered the derailment and property damage on or about November 5, 1988.

Conrail crews and outside contractors performed clean-up and salvage operation on plaintiffs' property through May 23, 1989. These operations included removing the derailed cars and the spilled coal from the site. It is estimated that three thousand tons of coal spilled. Pursuant to the derailment and clean-up standing trees were destroyed. The grading and contour of the land was altered and some coal deposits remain on the land. Conrail through its employees, agents, or contractors cut down standing trees on plaintiffs' property to use for firewood. Conrail regraded and reseeded the derailment site.

Plaintiffs' property consists of approximately 37 acres in West Keating Township, Clinton County, Pennsylvania. Most of the land was naturally grown trees and shrubs. Plaintiffs purchased the land in 1985 for $10,000 and in 1988 they erected a one-story cabin. Conrail's track in West Keating Township runs along the Susquehanna River and bisects plaintiffs' property. Plaintiffs allege damage to their land and realty in the amount of $24,455.

## ISSUES

I. Whether plaintiffs are entitled to punitive damages for the derailment and Conrail's actions following the derailment.

II. Whether plaintiffs are entitled to damages for the trespass, for the derailment in and of itself, exclusive of compensatory damages for the injuries to the real estate.

III. Whether the measure of damage for injury to Stouts' real estate is cost of repairs or value of the property.

## DISCUSSION

Conrail seeks partial summary judgment on three issues related to the proper measure of damages in this action. Conrail, as moving party, bears the burden of proving that no genuine issues exist as to any material facts and that it is entitled to partial judgment as a matter of law. Pa.R.C.P. 1035(b); *Pennsylvania Gas & Water Co. v. Nenna & Frain Inc.,* 320 Pa. Super. 291, 467 A.2d 330 (1983). The court must examine the record in the light most favorable to plaintiffs, accept as true all well-pled facts in plaintiffs' favor, and give plaintiffs the benefit of all reasonable inferences to be drawn therefrom. *Spain v. Vicente,* 315 Pa. Super. 135, 461 A.2d 833 (1983).

### *Punitive Damages*

Defendant moves for summary judgment on plaintiffs' claim for punitive damages. Defendant contends plaintiffs have failed to allege outrageous conduct by defendant. Defendant takes the position that plaintiffs' claim for punitive damages arises only from defendant's alleged intentional trespass—i.e., breaking the lock on the gate and entering plaintiffs' property. Defendant argues that it was operating under a privilege to enter plaintiffs' property and that it did so "with good intentions and with good motive." Brief in support at 7.

In response, plaintiffs contend defendant's actions on plaintiffs' property indicate concern only for defendant's pecuniary interests and a lack of concern for plaintiffs' rights. Plaintiffs argue that the totality of the circumstances and the relation between the parties support plaintiffs' claim for punitive damages. Plaintiffs conclude that the issue of punitive damages should be left to the trier of fact.

In Pennsylvania punitive damages may be awarded where one party's conduct has been malicious, reckless, wanton, willful or oppressive. *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984). The court must consider all the circumstances including the motive of the wrongdoer and the relation between the parties to determine if the wrongdoer's conduct is outrageous or egregious. *Id.; Dean Witter Reynolds Inc. v. Genteel,* 346 Pa. Super. 336, 499 A.2d 637 (1985). Conduct that is outrageous because of evil motive or reckless indifference to the rights of others supports an award of punitive damages. Restatement (Second) of Torts §908(2); *Kirkbride v. Lisbon Contractors Inc.,* 385 Pa. Super. 292, 560 A.2d 809 (1989); *Focht v. Rabada,* 217 Pa. Super. 35, 268 A.2d 157 (1970).

The court must deny defendant's motion for summary judgment on this issue. Defendant has taken a particularly narrow view of which allegations support a claim for punitive damages. This is not a simple trespass case. The amended complaint alleges the following actions by defendant exhibited a "reckless indifference and wanton disregard of the rights of plaintiffs with respect to their real property": (1) failure to notify plaintiff of the derailment; (2) negligent trespass onto plaintiffs' property; (3) intentional trespass onto plaintiffs' property; (4) failure to notify plaintiffs of the commencement of clean-up operations; (5) willful destruction of standing trees on plaintiffs' property; (6) alteration of the grade and contour of plaintiffs' property; (7) failure to remove all coal deposits from plaintiffs' property and (8) destruction of standing trees on plaintiffs' property for use as firewood. Defendant's evidence submitted in support of the instant motion fails to rebut these allegations. See affidavit of Patrick G. Weaver; stipulation of facts.

The court finds defendant's authority unpersuasive. Defendant cites *Gedekoh v. Peoples Natural Gas Co.,* 183 Pa. Super. 511, 133 A.2d 283 (1957), for the proposition that the defendant gas company that had a right-of-way on plaintiffs' property also was "privileged" to use other portions of the plaintiffs' property. In fact, although the Superior Court agreed that plaintiffs had failed to state a case in trespass, the Superior Court held that plaintiffs had stated a suit in assumpsit and should have been permitted to amend their complaint. In *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742, (1984), the Supreme Court ruled as a matter of law the issue of punitive damages should not have been submitted to the jury because there was no evidence that appellants' conduct was outrageous. The facts in *Feld* are completely unrelated to those in this action. Appellees in *Feld* attempted to hold their landlord liable for the criminal acts of three armed felons who attacked appellees in the parking garage adjacent to their apartment complex.

In *Pittsburgh Outdoor Advertising Co. v. Virginia Manor Apartment Inc.,* 436 Pa. 350, 260 A.2d 801 (1970), plaintiff owned a small parcel of land on which it erected four billboards. Defendant, while engaged in a major construction project on its adjacent property, knocked down the four billboards. Additionally, defendant dumped a "huge amount" of fill on plaintiff's property and constructed a sewer line that plaintiff contended was on plaintiff's property. The chancellor, serving as fact finder, determined that defendant's conduct in invading plaintiff's property was not intentional, willful, or wanton. The Superior Court found ample evidence to support that finding and affirmed the decree disallowing punitive damages.

The court finds *Pittsburgh Outdoor Advertising* instructive in that the issue of whether defendant's invasion of plaintiff's property was intentional, willful, or wanton was a question of fact. Whether Conrail's conduct justifies an award of punitive damages is a question that must be left to the jury. The court is unable to say as a matter of law that Conrail was not recklessly indifferent to plaintiffs' rights.

## Damages for Negligent Trespass

In count I of the amended complaint plaintiffs seek damages for the derailment itself as a "negligent trespass." Plaintiffs contend damages of negligent trespass are recoverable if the activity that caused the negligent trespass is an "abnormally dangerous activity." Plaintiffs further argue that Conrail's operation—transporting rail cars full of coal—constituted an abnormally dangerous activity.

Plaintiffs rely on Restatement (Second) of Torts §§519-520. Section 519 imposes absolute liability on one who conducts an "abnormally dangerous activity" that causes harm to another. Absolute liability is imposed regardless of the actor's intent or the presence or absence of negligence. Section 520 delineates the following factors to consider in determining whether an activity is abnormally dangerous:

"(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

"(b) likelihood that the harm that results from it will be great;

"(c) inability to eliminate the risk by the exercise of reasonable care;

"(d) extent to which the activity is not a matter of common usage;

"(e) inappropriateness of the activity to the place where it is carried on; and

"(f) extent to which its value to the community is outweighed by its dangerous attributes."

It is the task of the court to decide whether an activity is abnormally dangerous. *Albig v. Municipal Authority of Westmoreland County*, 348 Pa. Super. 505, 502 A.2d 658 (1985).

Weighing the above six factors, the court declines to classify the operation of a freight train as an abnormally dangerous activity. The court found no authority to the contrary. The derailment occurred in sparsely populated, remote, mountain land. Thus, the degree of risk to persons was minimal. Because the cars carried coal and not some sort of explosive material, the likelihood of great harm was minimal. Freight trains are a common, everyday phenomena——more akin to automobiles than tanks. See Restatement (Second) of Torts §520, comment i. Accordingly, the court will grant defendant's motion for partial summary judgment on count I of the amended complaint.

### Measure of Damages to Real Estate

It appears that all parties agree this issue cannot be resolved at this juncture. It further appears that the parties agree as to what the law provides: the measure of damages for a permanent injury to real estate is the diminution in fair market value; the measure of damages for a temporary injury is the cost of repairs or the diminution of fair market value, whichever is lower.

Whether the damage to plaintiffs' property is permanent or temporary is an issue that can only be determined after consideration of all the evidence. The facts argued to the court indicate that the

character of plaintiffs' property has been altered by the elimination of the trees and other foliage that obscured plaintiffs' cabin from the river. The degree of change and the length of time it may take for comparable privacy to be restored are issues best left to the jury.

## ORDER

And now, June 4, 1991, based upon the foregoing opinion, it is hereby ordered that defendant's motion for summary judgment on count I of plaintiff's amended complaint be sustained and the requested relief allowed.

It is further ordered that defendant's motion for partial summary judgment on counts III and IV be dismissed and the requested relief denied.